## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

ROBERT E. JACKSON,                          )
                                            )
               Plaintiff ,          )
                                            )
          vs.                       )          Case No. CIV-07-952-D
                                            )
DENNIS BANTHER, et al.,                     )
                                            )
          Defendants.               )

## REPORT AND RECOMMENDATION

Plaintiff, Robert Earl Jackson, filed this action several days after being released on bond, complaining of his arrest and resulting confinement as a pre-trial detainee in the Kingfisher County Jail [Doc. Nos. 1 and 6].  In response to two orders by the undersigned to correct pleading deficiencies [Doc. Nos. 6 and 8], Plaintiff ultimately filed an amended complaint conforming to such orders [Doc. No. 10]; service and a Special Report were ordered [Doc. No. 11].  The two named Defendants, Kingfisher County Sheriff Dennis Banther and Garfield County Sheriff's Deputy Jason Priest, separately answered the amended complaint [Doc. Nos. 17 and 18], and a dispositive motion deadline was established [Doc. No. 20].  Separate motions seeking summary judgment were then timely filed by the two Defendants [Doc. Nos. 30, 31, 32, 33 and 34].

Just prior to the dispositive motion deadline, Plaintiff filed motions seeking to submit evidence, *see* Doc. Nos. 25, 26, and 27, wherein he advised the court that the charges related to his arrest and confinement had been dismissed [Doc. No. 27, p. 2].  Because dismissal of the pending charges could have impacted the ability of Plaintiff – who was proceeding in

forma pauperis – to pay the filing fee, the undersigned ordered either payment in full of the filing fee or the submission of an updated form application for leave to proceed in forma pauperis [Doc. No. 29].  Plaintiff ultimately paid the filing fee [Doc. Nos. 35, 37 and 38].  Nonetheless, despite remitting the filing fee, Plaintiff failed to respond to the motions for summary judgment.  The undersigned granted a sua sponte extension of time, advising Plaintiff that pursuant to the rules of this court, "All material facts set forth in the statement of the material facts of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party." [Doc. No. 36, quoting LCvR56.1(c)]. By that same order, the undersigned noted that Plaintiff had utilized three different addresses in the course of the litigation and advised him that he was required by local rule – LCvR5.5(a) – to notify the court of any address change [Doc. No. 36].  This order was mailed to Plaintiff at his address as reflected on the court's docket sheet.  *Id.*

Plaintiff again failed to respond to the pending motions, and the undersigned granted sua sponte extensions on two more occasions [Doc. Nos. 39 and 40].  The order granting the final sua sponte extension was directed to be mailed to Plaintiff at both his docket sheet address and an address he had used in more recent correspondence [Doc. No. 40].  No responses have been filed.  The undersigned is satisfied that all means of advising Plaintiff of the consequences of his failure to controvert Defendants' material facts have been exhausted.  Thus, the merits of Defendants' summary judgment motions are determined as follows in the absence of responsive briefs by Plaintiff.

2

**Standard of Review - Summary Judgment**

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (c). In considering a motion for summary judgment, the court must view the facts and inferences drawn from the record in the light most favorable to the nonmoving party. *Calhoun v. Gaines*, 982 F.2d 1470, 1472 (10th Cir. 1992). A *Martinez* or Special Report is customarily treated as an affidavit, as is the complaint, if it alleges facts based upon Plaintiff's personal knowledge and has been signed under the penalty of perjury, which is the case here.[1] *Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir. 1991). Material factual disputes cannot be resolved through summary judgment based on conflicting affidavits. *Id.* A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving] party." *Id.* at 252. Additionally, if the moving party demonstrates an absence of evidence regarding an issue on which the

---

[1]Despite having denied [Doc. No. 28] Plaintiff's motions to submit evidence [Doc. Nos. 26 and 27], the undersigned reviewed such motions for purposes of this Report and Recommendation. It is noted that while Plaintiff characterized one of his filings as an Affidavit in Support of Complaint, the affidavit was not signed under penalty of perjury [Doc. No. 27]. The undersigned also examined Plaintiff's first complaint [Doc. No. 1] as well as his first amended complaint [Doc. No. 7]. Each complaint includes a sworn affidavit executed by Plaintiff on August 27, 2007. Based upon this examination, the undersigned has determined that Plaintiff incorporated the material statements in his affidavit into the allegations of his second amended, and verified, complaint [Doc. No. 10]. Thus, the undersigned has considered each of the sworn statements submitted by Plaintiff.

nonmoving party will bear the burden of proof at trial, the nonmoving party can defeat summary judgment only by designating "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Because Plaintiff failed to respond to Defendants' motions, he has failed to dispute Defendants' factual allegations under the federal procedural rule applicable to summary judgment determinations:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must– by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56 (e) (2).  In this same vein, the local rules of this court provide in part that, "All material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party."  LCvR56.1(c).

**Plaintiff's Complaint**

In describing the nature of his case, Plaintiff alleges "a wholesale denial of due process and equal protection of law" through the denial of an "opportunity to make bail" and the deprivation of "humane confinement conditions," [Doc. No. 10, p. 2].  He further alleges that he was deprived "of freedom from treatments that were racially motivated." *Id.*  Plaintiff identifies Defendant Dennis Banther as the Sheriff of Kingfisher County who, "as such is responsible for the care and custody of all persons confined at Kingfisher County Jail." *Id.*

at 1. Defendant Jason Priest is characterized as "a multi county narcotics officer" who "is responsible for using arrest procedures that comply with the dbue [sic] process of law mandates of the United States Constitution." *Id.* at 2.

The first three of the four counts of Plaintiff's complaint relate to his confinement and are directed against Defendant Banther.[2]  In Count I – for claimed violations of Plaintiff's Sixth and Fourteenth Amendment rights – Plaintiff maintains that at the "time of being booked into the Kingfisher County Jail [he] requested being allowed to post bail, to be provided with Oklahoma Statutes and Federal Statutes and these requests were denied." *Id.* at 3. He further alleges that "[r]equests were also made for legal support, legal representation and legal forms after he was told that no opportunity for posting bail would be allowed until a court appearance was held that was scheduled for seven days after the date he was booked into custody." *Id.*

Count II contains contentions implicating Eighth and Fourteenth Amendment violations: Plaintiff is a diabetic who is required to inject insulin and "[d]uring his confinement at Kingfisher County Jail he was denied access to glucose test strips necessary to monitor glucose levels prior to injecting insulin[; h]e was without any means to purchase any strips, without stamps to write to family for stamps, and without access to any means of acquiring hygiene items needed to maintain reasonable health care for himself . . ." and "was

---

[2]Plaintiff has not disputed the following statement of uncontroverted fact by Defendant Priest: "Plaintiff is not suing Deputy Priest for the conditions of his confinement in the Kingfisher County Jail, but for his arrests only." [Doc. No. 34, p. 7, Uncontroverted Fact No. 21].

also deprived of any reasonable opportunity for exercise, safe living conditions and therefore he was subjected to conditions that were cruel and unusual . . . ." *Id.*

In the third and final count pertaining to the conditions of his confinement, Plaintiff maintains that "[t]he confinement conditions of Kingfisher County Jail are so barbaric that they violate tenants [sic] of fairness and decency." *Id.* at 4. Specifically, Plaintiff complains of improper ventilation, an absence of "reasonable toilets and sleeping areas," and inadequate bedding. *Id.* Finally, Plaintiff alleges that the jail was not safe as the jailers did not make regular rounds and that "there was an ongoing lack of concern for the welfare of the prisoners and the conditions." *Id.*

Through Count IV, Plaintiff contends "[t]hat the arrest of this Plaintiff was done as [a] result of deeds and actions of Jason Priest due to racial prejudices and no culpable evidence." *Id.* at unnumbered page inserted between pp. 4 and 5. In this regard, he claims that Defendant "Priest acted . . . to include this plaintiff in a criminal matter while knowing that said plaintiff had no involvement in any criminal activity." *Id.* He further states that he was stopped on Highway 81, was "required to lay on said highway at gunpoint," that he as well as his two passengers were searched and, that his vehicle was searched "but nothing illegal was found." *Id.* Plaintiff continues with this description of Defendant Priest's alleged actions:

> Jason Priest did then and there order the police drug dog to search the vehicle and still nothing was found. Refusing to accept the result of this police raid Jason Priest did then and there require that plaintiff and all parties in the vehicle be handcuffed and escorted to Kingfisher, Oklahoma where we were interrogated for approximately three hours before being released. Jason Priest

6

did state at the time of this release that he would be seeing all of us in a few weeks, if not sooner.  Some five weeks later this Plaintiff was arrested at his job at the Advance Food company in Enid Oklahoma for the alleged incident that he had been stopped for along highway 81, although no evidence of any wrongdoing by plaintiff was ever produced. Plaintiff asserts that the arrest was premised on the racial hatred and disdain of Jason Priest who believes that all Black men are involved in drug trafficking.

*Id.*  As opposed to the first three counts, Plaintiff does not identify a particular constitutional violation with regard to this claim against Defendant Priest.

Plaintiff claims that he was damaged as a result of Defendants' actions and seeks "monetary redress" for the loss of his job and insurance coverage "due to no call no show for work" and for the loss of his vehicle "where it was never shown that said vehicle was involved in any criminal activity nor was any illegal substance found in said vehicle." *Id.* at 5.  He further claims that he suffered as a result of conditions of confinement at the Kingfisher County Jail and that he is entitled to "redress that is monetary" for his mental anguish and physical suffering.  *Id.*

### Analysis of Defendant Banther's Motion for Summary Judgment

As with all of Defendant Banther's stated uncontroverted facts, Plaintiff has not contested the fact that he "is suing the Sheriff in his official capacity only, as the official in charge of the Jail, as the Sheriff had no personal participation in any of the Plaintiff's alleged constitutional violations." [Doc. No. 33, p. 2. Uncontroverted Fact No.2].[3]  Any claim against

_____

[3]Plaintiff's complaint states that, "Dennis Banther is the Sheriff of Kingfisher County and as such is responsible for the care and custody of all persons confined at Kingfisher County Jail." With respect to any possible claim against Defendant Banther as a supervisor,  "supervisor status by itself is insufficient to support liability."  *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir.

the Kingfisher County sheriff in his official capacity is tantamount to an action against

Kingfisher County itself.[4]   See *Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999)

("Appellant's suit against Sheriff LeMaster in his official capacity as sheriff is the equivalent

of a suit against Jackson County.").   To make a viable claim of  county liability, Plaintiff

must allege that the wrongs about which he complains were caused by a policy or custom on

the part of the county.   *See Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d

1313, 1320 (10th Cir. 1998) ("municipal liability under § 1983 attaches where . . . a

deliberate choice to follow a course of action is made from among various alternatives by the

official or officials responsible for establishing final policy with respect to the subject matter

in question") (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986)).

It is not enough for a plaintiff "merely to identify conduct properly attributable to the

municipality[; t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the

municipality was the 'moving force' behind the injury alleged."   *Board of County Com'rs

of Bryan County, Okl. v. Brown,* 520 U.S. 397, 404 (1997).  The Court further explained that

---

1996) "[A] plaintiff must show an affirmative link between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates."  *Serna v. Colorado Dept. Of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006) (citations and internal quotation marks omitted).  "[T]he supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior" and a plaintiff must establish "that the supervisor acted knowingly or with deliberate indifference that a constitutional violation would occur."  (citations and internal quotation marks omitted).  Plaintiff has not made the requisite showing here.

[4]*See Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

8

[P] roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains.

*Id.* at 405.

Under the law of Oklahoma, a sheriff is "vested with the final policymaking making authority over the Sheriff's Department." *Hollingsworth v. Hill,* 110 F.3d 733, 743 (10th Cir. 1997). Moreover, "[t]he sheriff shall have the charge and custody of the jail of his county." Okla. Stat. tit. 19, § 513. Accordingly, the question becomes whether the Sheriff's polices or customs were the moving force behind the due process violations[5] asserted by Plaintiff. Defendant Banther contends that Plaintiff has failed to identify any such policy or custom [Doc. No. 33, p. 14].

## **Denial of the Opportunity for Bail**

With regard to Plaintiff's claim that he was denied the opportunity for bail, Defendant Banther argues that it is undisputed that "Plaintiff was booked into the Kingfisher County Jail . . . on Thursday August 16, 2007 at approximately 5:20 p.m. on a charge of unlawful delivery of a controlled dangerous substance in violation of Okla. Stat. tit. 63, § 2-

---

[5]*See Gaylor v. Does,* 105 F.3d 572, 575 (10th Cir. 1997) (the Due Process Clause governs the period of confinement following a probable cause determination). Here, Plaintiff was arrested following Judge Susie Pritchett's finding of probable cause on August 14, 2007, and was booked into the Kingfisher County Jail on August 16, 2007." *See* Doc. No. 34, p. 6, Uncontroverted Fact No. 14, and *id.* at Exhibit 1.

401(B)(2)." *Id.* at p. 2, Uncontroverted Fact No. 3, and p. 15.  He further maintains that "[i]t is the policy of the Kingfisher County Jail that any prisoner entitled to bail may call a licensed bondsman or post a cash bond." *Id.* at p. 3, Uncontroverted Fact No. 8, and p. 15].[6] Nonetheless, Defendant Banther claims – both through argument of counsel and as uncontroverted "fact" – that "[t]he Sheriff's Department by statute, Okla. Stat. tit. 22, § 1105, cannot release any prisoner who has been arrested for a violation of Okla. Stat. tit. 63, § 2-401 until the prisoner has appeared before the court." *Id.* at p. 3, Uncontroverted Fact No. 7, and p. 15].  Thus, because arraignments are set on Wednesday by the District Court of Kingfisher County, *id.* at p. 3, Uncontroverted Fact No. 6, and p. 15, Defendant Banther claims that he "was legally prohibited from releasing Plaintiff until his bail had been set by the court during Plaintiff's initial appearance the Wednesday following his booking." *Id.* at p. 15.  He concludes that, "[t]herefore, any deprivation of the Plaintiff's constitutional rights

---

[6]The provisions of the Kingfisher County Sheriff's Department Jail Procedures referenced by Defendant Banther in connection with this uncontroverted fact state:

> Any prisoner entitled to bail, may call a licensed bandsman [sic] or post a cash bond. During weekdays, office hours form [sic] 8:00 am to 4:30 pm bonds are to be posted at the Court Clerks office.  During hours the Court House is Closed; 4:30 pm to 8:00 am, weekends, and holidays, the Sheriff's Office will accept *cash* bonds as authorized by the Court.  These bonds are to be given to the Sheriff's secretary on [sic] later than 8:30 am the morning of the next working day.  The secretary will deposit it with the County Treasurer and a warrant will be issued to the Court Clerk. The Court Clerk will return the cash bond money to the person that posted the bond.

> The jailer or bondsman will advise the Defendant that he must report for arraignment in the District Court at 11:00 am on the next working day, or court day following release.

in this regard was not due to any policy of the Sheriff, and the Sheriff is entitled to summary judgment with regard to this claim." *Id.* at 15 - 16.

Defendant Blather's statement of the applicable Oklahoma law is incorrect.  Okla. Stat. tit. 22, § 1105 – the provision that Defendant Banther claims proscribes the "release [of] any prisoner who has been arrested for a violation of Okla. St. tit. 63, § 2-401 until the prisoner has appeared before the court," [Doc. No. 33, p. 15],  only pertains to subsection G of § 2-401:

> A.     Except as otherwise provided by this section, upon the allowance of bail and the execution of the requisite recognizance, bond, or undertaking to the state, the magistrate, judge, or court, shall, if the Defendant is in custody, make and sign an order for discharge.  The court, in its discretion, may prescribe by court rule the conditions under which the court clerk or deputy court clerk, *or the sheriff or deputy sheriff,* may prepare and execute an order of release on behalf of the court.
>
> .   .   .
>
> C.     No police officer or sheriff may release a person arrested for a violation of *subsection G* of Section 2-401 of Title 63 of the Oklahoma Statutes, without the violator appearing before a magistrate, judge, or court. . . .

Okla. Stat. tit. 22, § 1105 (A) and (C)(emphasis added).

Subsection G of Okla. Stat. tit 63, 2-401 pertains to the unlawful manufacture of controlled dangerous substances; the uncontroverted facts show that Plaintiff was not charged under that provision but rather with unlawful delivery of a controlled dangerous substance in violation of Subsection B(2) of the statute [Doc. No. 33, p. 2, Uncontroverted Fact No. 3].  Consequently, Defendant Banther has failed to demonstrate as a matter of law

that his policy – prohibiting the release on bail of a prisoner charged with a violation of *any* of the subsections of § 2-401 prior to a court appearance – did not deny Plaintiff the opportunity to post bond. Accordingly, the undersigned recommends that Defendant Banther's motion for summary judgment be denied as to Plaintiff's claimed due process violations in connection with the denial of his opportunity to make bail.[7]

## Denial of Legal References and Legal Support

Plaintiff claims that he was denied legal references and legal support during his confinement in the Kingfisher County Jail [Doc. No. 10, p. 3]. A pretrial detainee has the right to access the courts but the availability of legal references or a law library is not "an essential component of access to the courts." *Love v. Summit County,* 776 F.2d 908, 913-14 (10th Cir. 1985) (citing *Bounds v. Smith,* 430 U.S. 817, 830-31 (1977). Here, it is uncontroverted that the Kingfisher County Jail telephone is available to inmates to make either collect or local calls and that it is the policy of the Kingfisher County Jail to post a list of area attorneys near the inmate telephones [Doc. No. 33, p. 3, Uncontroverted Fact Nos. 9 and 10]. It is likewise uncontroverted that Plaintiff was able to make phone calls. *Id.* at pp. 3 - 4, Uncontroverted Fact No. 11. Thus, as a matter of law and of undisputed fact, Plaintiff was not deprived by Defendant Banther of the ability to access the courts through a legal representative, and summary judgment should be granted on this claim.

---

[7]Counsel's proffer of this misstatement of the law as support for Defendants' motion appears to the undersigned to violate Fed. R. Civ. P. 11(b)(2). As a result, the undersigned recommends entry of an order requiring that counsel show cause why such conduct does not violate Rule 11(b).

**Denial of Medical Care**

Plaintiff claims that while confined in the Kingfisher County Jail, he was denied certain health care needs – specifically glucose test strips [Doc. No. 10, p. 3] – and asserts a violation of his Eighth and Fourteenth Amendment rights.  There is no evidence of record, however, "showing that a County policy was the moving force behind the alleged constitutional violation."  *See Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d at 1320.  Defendant Banther is entitled to summary judgment on this claim.

**Denial of the Opportunity to Purchase Stamps or Any Form of Hygiene Materials**

It is uncontroverted that the Kingfisher County Jail provides hygiene items – including soap and razors[8] – to each inmate and allows inmates to keep their own hygiene items[9] [Doc. No. 33, p. 6, Uncontroverted Fact No. 30 and Uncontroverted Fact No. 31].  It is likewise uncontroverted that while Plaintiff asserts that the Jail had no canteen where he could purchase items he found preferable to those provided by the Jail, he had no money with which to purchase such items.[10]  *Id.* at pp. 6 and 7, Uncontroverted Fact Nos. 31 and 32. Summary judgment is appropriate as a matter of undisputed fact.

---

[8]According to Defendant Banther's uncontroverted facts, "[t]he basis for Plaintiff's claim that he was denied hygiene items was that the Jail had soap, but not moisturized soap; that the Jail had razors, but not 'Magic Shave,' the razorless beard remover Plaintiff prefers; that the Jail did not have 'denture things' for his dentures; and that the Jail did not have a canteen where he could purchase these items." [Doc. No. 33, p. 6, Uncontroverted Fact No. 31].

[9]It is uncontroverted that "Plaintiff had denture adhesive creme in his property which was available to him."  [Doc. No. 33, p. 7, Uncontroverted Fact No. 35].

[10]Likewise, Plaintiff had no funds with which to acquire stamps had they been available for purchase.

13

## Denial of Opportunity to Exercise

Plaintiff claims that while confined in the Kingfisher County Jail, he was "deprived of any reasonable opportunity for exercise," [Doc. No. 10, p. 3] in violation of his Eighth and Fourteenth Amendment rights.  Once again, there is no evidence of record "showing that a County policy was the moving force behind the alleged constitutional violation."  *See Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d at 1320.  Defendant Banther is entitled to summary judgment on this claim.

## The Jail was Without Proper Ventilation and Reasonable Toilets

Not only is it uncontroverted that the Jail is properly ventilated [Doc. No. 33, p.8, Uncontroverted Fact No. 42] and that it has working toilets, *id.,* Uncontroverted Fact No. 43, but Plaintiff has again failed to point to evidence of an affirmative County policy to deprive him of proper ventilation and "reasonable" toilets.  Summary judgment is appropriate.

## The Jail was Without Reasonable Sleeping Areas and Adequate Bedding; the Jail was Unsafe

Contrary to Plaintiff's wholly conclusory and non-specific allegations about the bedding and sleeping areas of the Kingfisher County Jail as well as safety concerns where officials on duty did not make regular rounds [Doc. No. 10, p. 4], it is uncontroverted that "there is no double bunking and every prisoner has his own bunk[,]" [Doc. No. 33, p. 9, Uncontroverted Fact No. 46]; that Plaintiff received his own mattress and blanket upon booking, *id.,* Uncontroverted Fact No. 47, and, that documented jail checks are performed hourly.  *Id.,* Uncontroverted Fact No. 48.  In the absence of conflicting evidence from

14

Plaintiff, Defendant Banther has established that there are no genuine issues of fact as to these claims; summary judgment is appropriate.

**Analysis of Defendant Priest's Motion for Summary Judgment**

Plaintiff alleges "[t]hat the arrest of Plaintiff was done as [a] result of deeds and actions of Jason Priest due to racial prejudices and no culpable evidence." [Doc. No. 10, unnumbered page inserted between pp. 4 and 5].  Plaintiff's complaint does not state in what capacity he is suing Defendant Priest, a Garfield County Sheriff's Deputy [Doc. No. 34, p. 6, Uncontroverted Fact No. 15].  As was  discussed with regard to Defendant Banther, however, any claim against Defendant Priest in his official capacity is tantamount to an action against the county.  Plaintiff has not alleged that the wrongs about which he complains were caused by a policy or custom on the part of the county; likewise, there is no suggestion that Defendant Priest has final policymaking authority.  Accordingly, Plaintiff's claims against Defendant Priest are necessarily brought against him in his individual capacity.

In his individual capacity, Defendant Priest argues in part that he is entitled to summary judgment because it is uncontroverted that he "was not involved in . . . the arrest of Plaintiff on July 17, 2007" nor was he "involved in the arrest of Plaintiff on August 15, 2007."  *Id.,* Uncontroverted Fact Nos. 16 and 17.  Because Plaintiff's verified complaint suggests that Defendant Priest was present at the July 17, 2007, arrest [Doc. No. 10, unnumbered page inserted between pp. 4 and 5], the undersigned assumes for purposes of this summary judgment determination that Defendant Priest was present as Plaintiff appears to allege.  Thus, Defendant Priest's alternative argument – that Plaintiff's arrests were

15

supported by probable cause[11] – is addressed below along with Plaintiff's claim that his arrests were premised on Defendant Priest's racial prejudice.  In this regard, the following facts are uncontroverted, and Defendant Priest's presence is assumed:

1.  "On July 17, 2007, Kingfisher County undercover Deputy, Chad Joyce, was contacted by Michael Barnes by text message asking Deputy Joyce if he wanted to purchase an eightball of cocaine.  An agreed upon price of One Hundred Sixty Dollars, plus Twenty Dollars for gas was reached, and the parties agreed to meet at the truckstop at the Highway 81 and Highway 51 Junction outside Hennessey in Kingfisher County." [Doc. No. 34, p. 3, Uncontroverted Fact No. 1].

2.  "Prior to arriving at the location, Deputy Joyce photocopied and recorded the serial numbers of ten Twenty Dollar bills and placed an audio listening device inside his automobile."  *Id.* at p. 4, Uncontroverted Fact No. 2.

3.  "Barnes then contacted Deputy Joyce again and asked him to meet him at the Pizza Hut on Highway 51 in Hennessey.  Deputy Joyce arrived at the Pizza Hut and observed Barnes exiting a white Chevy Blazer.  Deputy Joyce also observed a female, Brandi Willingham, letting Barnes out of the vehicle.  The driver of the vehicle was identified by Deputy Joyce as the Plaintiff, Robert Jackson."  *Id.,* Uncontroverted Fact No. 3.

4.  "Barnes entered Deputy Joyce's vehicle, told the Deputy to drive, and dropped a clear plastic bag of a white, powdery substance on the center console.  They drove around

---

[11]There is no question that the August 15, 2007, arrest was based on a finding of probable cause made by Judge Susie Pritchett [Doc. No. 34, Exhibit 1].

the block and parked at an apartment complex, and Deputy Joyce weighed the bag containing the white, powdery substance.  They then drove back to the white Chevy Blazer and Deputy Joyce left Barnes at that location."  *Id.,* Uncontroverted Fact No. 4.

5.  "Plaintiff had been the driver on three separate previous occasions where Deputy Joyce had purchased cocaine or met to purchase methamphetamine from Willingham."  *Id.,* Uncontroverted Fact No. 5.

6.  "As part of the operation, the vehicle occupied by Barnes, Willingham and Plaintiff was pulled over approximately three miles north of Hennessey.  Deputies Cornish and Blankenship advised them that they had probable cause to take them in for unlawful delivery of a controlled dangerous substance."  *Id.,* at pp. 4 - 5, Uncontroverted Fact No. 6.

7.  "The deputies searched Barnes, Willingham and Plaintiff and found six of the previously recorded Twenty Dollar bills on Barnes, two on Willingham, and one on Plaintiff. The three were then transported to the Kingfisher County Sheriff's Department."  *Id.* at p. 5, Uncontroverted Fact No. 7.

8.  "Deputy Priest arrived after the suspects had been transported to the Kingfisher County Sheriff's Department.  He field tested the bag containing the white, powdery substance and it showed a positive result for cocaine."  *Id.,* Uncontroverted Fact No. 8.

9.  "The suspects were read their Miranda rights and interrogated by Deputy Priest." *Id.,* Uncontroverted Fact No. 9.

10.  "Plaintiff agreed to talk to Deputy Priest.  He stated that he had just agreed to give Barnes a ride in exchange for Twenty Dollars gas money and that he did not know what was

17

going on.  Plaintiff stated that he had received the money before they left.  Plaintiff then recanted his story and stated that he was to be given the money when they returned, and that he had not received any money yet."  *Id.,* Uncontroverted Fact No. 10.

11.  "During his interrogation, Barnes agreed to act as a confidential informant. Accordingly, Barnes, Willingham and Plaintiff were released."  *Id.,* Uncontroverted Fact No. 11.

12.  "Barnes failed to live up to his agreement to act as a confidential informant and an Affidavit of Probable Cause for Plaintiff was issued on August 14, 2007."  *Id.* at p. 6, Uncontroverted Fact No. 12.

13.  "The Affidavit of Probable Cause and Information charging Plaintiff with unlawful delivery of a controlled dangerous substance in violation of Title 63 O.S. § 2-401(B)(2), a felony, were filed in the District Court of Kingfisher County, State of Oklahoma on August 17, 2007, Case No. CF-2007-61."  *Id.,* Uncontroverted Fact No. 13.

14.  "Plaintiff was arrested in Enid, Oklahoma on the Affidavit of Probable Cause on or about August 15, 2007 and was booked into the Kingfisher County Jail on August 16, 2007."  *Id.,* Uncontroverted Fact No. 14.

15.  "Plaintiff has no evidence that Deputy Priest is a racist other than his subjective impression based upon Deputy Priest's demeanor during his interrogation."  *Id.* at p. 7, Uncontroverted Fact No. 1.

16. "Plaintiff knows that he was pulled over and arrested on suspicion of drug trafficking because his passenger was involved in an encounter with a narcotics officer, not because of his race." *Id.,* Uncontroverted Fact No. 20.

Defendant Priest has asserted qualified immunity as an affirmative defense to Plaintiff's claims, relying in part upon the decision in *Robertson v. Las Animas County Sheriff's Dept.* 500 F.3d 1185, 1191 (10th Cir. 2007), in which the court discussed qualified immunity in the context of a warrantless arrest:

> When the defendant asserts qualified immunity as a basis for summary judgment, we must first ascertain whether the plaintiff has sufficiently asserted the violation of a constitutional right. If the plaintiff meets this burden, we then consider whether the law was clearly established at the time of the defendant's actions. In order for the law to be considered clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. If either of these requirements is not met, the defendant is entitled to qualified immunity and summary judgment is appropriate.

> When a warrantless arrest is the subject of a § 1983 action, the arresting officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest. Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense. But even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.

*Robertson v. Las Animas County Sheriff's Dept.* 500 F.3d 1185, 1191 (10th Cir. 2007)(quotation marks and citations omitted)). Moreover, it is Plaintiff's burden to establish that the arresting deputy did not rely on reasonably trustworthy information. *Id.* at 1192.

Plaintiff has not met his burden in this case through the only competent evidence he has offered – the verified statements in his complaint: that Defendant Priest knew that Plaintiff had no involvement in any criminal activity; that nothing illegal was found following a search; and, that his arrests were "premised on the racial hatred and disdain of [Defendant] Priest who believes that all Black men are involved in drug trafficking." [Doc. No. 10, unnumbered page inserted between pp. 4 - 5]. To the contrary, it is undisputed that the subject of an undercover drug operation was seen getting out of Plaintiff's car during a controlled drug buy. Moreover, Plaintiff was identified by the undercover deputy as the driver on three previous undercover drug buys and had in his possession one of the Twenty Dollar bills that the undercover deputy had recorded for the drug buy. Finally, it is undisputed that "Plaintiff knows that he was pulled over and arrested on suspicion of drug trafficking because his passenger was involved in an encounter with a narcotics officer, not because of his race." [Doc. No. 34, p. 7, Uncontroverted Fact No. 20]. Accordingly, Defendant Priest is entitled to summary judgment.

## <u>RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT</u>

It is the recommendation of the undersigned Magistrate Judge that Defendant Banther's motion for summary judgment [Doc. No. 33] be denied as to Plaintiff's claim that he was deprived of the opportunity to make bail and granted as to all remaining claims. It is recommended that Defendant Priest's motion for summary judgment [Doc. No. 34] be granted. Finally, it is recommended that counsel for Defendants be required to show cause why his representation that Sheriff Banther was legally prohibited by Okla. Stat. tit. 22, §

1105 from releasing Plaintiff until his bail was set by the court did not violate the requirements of Rule 11(b)(2), Fed. R. Civ. P.

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by the 20th day of August, 2008, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  The parties are further advised that failure to make timely objection to the Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

IT IS SO ORDERED this 31st day of July , 2008.


_____
BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE